REYNOLDS (SMITH v.). See Cases Nos. 13,-097–13,099.

REYNOLDS (STAPLETON v.). See Case No. 13,303.

REYNOLDS (THIELMAN v.). See Case No. 13,883.

REYNOLDS (VALENTINE v.). See Case No. 16,813.

REYNOLDS (VANDERBILT v.). See Case No. 16,839.

━━━━━

## Case No. 11,734.

### REYNOLDS v. WILLIAMS.

[4 Biss. 108.] [1]

Circuit Court, D. Indiana. Sept., 1867.

INTERNAL REVENUE — GAINS — PROFITS—INCOME—RAILROAD.

In 1863, the Lafayette and Indianapolis R. R. Co. accumulated a fund of $100,000 in U. S. bonds as net earnings. In 1867, by consolidation with another road, it ceased to exist. By

───────

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

the articles of consolidation, this fund was transferred to the plaintiff, as a trustee for the use of the stockholders in the first-named company. An assessor of internal revenue assessed on this fund in the hands of the trustee, $5,000 of taxes, as being gains, profits, and income accrued to the beneficiaries in the year in which the trustee received the fund. To make this tax, the collector of internal revenue, the defendant, threatened to distrain the trustee's property. To avoid such distress, the latter, under protest, paid the $5,000. Held, that said $100,000 was not, under the circumstances, liable to the tax of $5,000; and that the tax so paid might be recovered.

[This was an action at law by William F. Reynolds against John S. Williams to recover taxes alleged to have been illegally exacted under protest. Heard on demurrer.]

McDonald, Roach & McDonald, for plaintiff.

Hendricks, Hord & Hendricks, for defendant.

McDONALD, District Judge. This is an action of assumpsit. The declaration consists of a simple special count. A demurrer is filed to it; and whether the demurrer ought to be sustained is the question to be decided.

The declaration avers, that on the 8th of January, 1867, the Lafayette and Indianapolis Railroad Company and the Indianapolis and Cincinnati Railroad Company—both Indiana corporations—were duly consolidated under the laws of this state, so as to merge the two in one new corporation called the Indianapolis, Cincinnati, and Lafayette Railroad Company; that, by the articles of said consolidation, the plaintiff was appointed trustee of the Lafayette and Indianapolis Railroad Company, charged with the duty of adjusting its unsettled business; that he accepted the trust; that in July, 1868, the plaintiff, in pursuance of instructions from the commissioner of internal revenue, issued to the assessor for the Eighth district of Indiana, reported to said assessor the condition of the receipts and expenditures of the Lafayette and Indianapolis Railroad Company from the 1st of July, 1864, to the 30th of June, 1866, the date at which the last-named company ceased to operate its road; that by said report it appeared that the net earnings of said company during that period were one hundred and eighty-eight thousand six hundred and sixty-two dollars and forty-five cents; that the plaintiff, in pursuance of like instructions, reported to said assessor the amount of funds of said company, by which it appears that on the 2nd of July, 1863, said company had invested in United States bonds one hundred thousand dollars, which the plaintiff, when he made said report, held in his hands as such trustee as aforesaid, and which were previous net proceeds of the company; that thereupon the assessor assessed against the plaintiff, as such trustee as aforesaid, internal revenue tax, not only on said one hundred and eighty-eight thousand six hundred and sixty-two dollars and forty-five cents, but also on said one-hundred thou-

sand dollars; that on said one hundred thousand dollars the tax, so assessed for the year 1867 was five thousand dollars; and that from this last-named assessment the plaintiff appealed to the commissioner of internal revenue, who, in September, 1868, overruled the plaintiff's objection to said assessment.

The declaration further alleges that the defendant, John S. Williams, who was then the collector for said Eighth district, being ordered to collect said five thousand dollars of tax, threatened to make the same by distress and sale; that to avoid such distress and sale, the plaintiff, under this coercion and under protest, paid said five thousand dollars to the defendant; and that the assessment of said tax was utterly illegal.

The declaration makes no complaint about the tax assessed on one hundred and eighty-eight thousand six hundred and sixty-two dollars and forty-five cents, and which appears to have been paid.

From the declaration, it is fairly deducible that said sum of one hundred thousand dollars is no part of said one hundred and eighty-eight thousand six hundred and sixty-two dollars and forty-five cents, but was held by the company long before the latter sum was accumulated.

It appears, then, that the one hundred thousand dollars of United States bonds was the property of the Lafayette and Indianapolis Railroad Company in the year 1863, and continued to belong to that company till its dissolution on the 8th day of January, 1867; and that on that day the plaintiff, as trustee, became, and ever since has been, the legal owner of the bonds in question. For whom he holds them in trust, is not clearly stated in the declaration. But, in the absence of positive statement, it must be presumed that this trust fund is held for the use of the stockholders in the now extinct Lafayette and Indianapolis Railroad Company. And the question is, ought this fund, thus held by the plaintiff in trust for men who were once corporators in said company, to have been thus taxed?

If the declaration does not affirmatively show with reasonable certainty that this taxation was illegal, we must sustain the demurrer. For if that is not shown, the presumption is in favor of the legality of the assessment.

The act in force when this assessment was made, declared "that there shall be levied, collected, and paid, annually, upon the gains, profits, and income of every person * * * whether derived from any kind of property, rents, interest, dividends, or salaries, or from any profession, trade, employment or vocation * * * or from any other source whatever," a tax, &c. 14 Stat. 478.

And the same act provides for the assessment on trustees of such "gains, profits, and income" in their hands for the use of beneficiaries. And the act makes such trustees liable to pay the revenue on such gains, profits, and income in like manner as the beneficiaries would be if the same were in their hands.

The only question, therefore, seems to be this: Was said sum of one hundred thousand dollars of U. S. bonds either gains, profits, or income acquired within the year 1867, in the sense in which these terms are used in the act above cited? If so, the taxation was right; otherwise, it was wrong.

From what appears in the declaration, it is certain that the plaintiff as a trustee, became the owner of these bonds on the 8th day of January, 1867. Before that time they were the property of the Lafayette and Indianapolis Railroad Company. On that day this company died, and by a sort of last will and testament, called in the declaration "Articles of Consolidation," transferred the legal title to said bonds to the plaintiff as a trustee, and the equitable interest in them, as I construe the declaration, to the stockholders of said company. These bonds, so far as appears from the declaration, never were taxed in the hands of the company.

I suppose that the "gains, profits, and income," mentioned in the act to which we have referred, are not to be regarded as an increase of the wealth of the trustees, but of the cestui que trusts for whom he receives and holds these gains, profits and income. I suppose, too, that the mere change from the hands of one trustee into those of another, of the fund which is the subject of the trust, would not make the whole fund in the hands of the last trustee—gains, profits, and income—within the meaning of the revenue law. If this be so, then the inquiry must be, whether the one hundred thousand dollars of bonds, which in 1867 came to the hands of the plaintiff as trustee, was so much added to the wealth of the beneficiaries as a new acquisition; or whether it was not a mere change of an interest that had accrued before the year 1867 from the hands of one trustee into those of another. When the bonds came to the possession of the plaintiff as trustee, he thereby became the legal owner of them; before that time, the Lafayette and Indianapolis Railroad Company was the legal owner of them. The beneficiaries never had more than an equitable title to them. An equitable title to them they undoubtedly have had ever since these bonds came into the possession of the plaintiff as trustee. But had the beneficiaries such an equitable title to the bonds while they remained in the possession of the railroad company? The answer to this question must decide the present action.

A railroad corporation is a mere ideal thing; and yet, in legal consideration, it is the owner of all the property which it controls,—the road, the rolling stock, the capital stock, the accumulated funds. But, in my opinion, it, being a merely artificial person, is only the legal owner of the property in trust for all the natural persons who are interested in it,

including all stockholders, and all creditors. Now, it appears by the declaration that the bonds in question had been acquired by the railroad company as early as 1863. This accumulated fund remained on hand till the company ceased to be. For whose use did the company hold this fund? Not for the use of its creditors; for it does not appear to have owed any debts. So far as appears, the stockholders were the only natural persons in the world who had any interest in this fund; and it inevitably follows that this artificial person, the railroad company, held it in trust for its stockholders. Hence, it is clear that, though the corporation was the legal owner of the bonds, yet the stockholders were the equitable owners of them; or—to say the least—had an equitable interest in them. I must conclude, therefore, that the beneficiaries for whom the plaintiff held these bonds in 1867 had some interest in them before that year; and that consequently the bonds were not wholly an acquisition of "gains, profits, and income" accruing to them in that year. But I go further: I think that the interest which the stockholders held in these bonds while the railway company was the legal owner of them, is precisely the same interest which they held in them when in the hands of the plaintiff as trustee. In neither case did they hold a legal title to them; and in both cases they held an equitable title to them, or at least an equitable interest in them.

It follows that the mere passage of this trust fund from the possession of the old trustee, the corporation, into that of the new trustee, the plaintiff, was not "gains, profits, or income," accruing to the stockholders by that operation.

Counsel for the defendant have called my attention to the case of Van Allen v. Assessors, 3 Wall. [70 U. S.] 573, as supporting their view of the case. But I do not perceive that it is at all in point.

The demurrer is overruled.

[NOTE. Subsequently the defendant filed a special pleading in bar of the action, in substance and effect as follows: That the fund assessed was a surplus fund of the company; that neither the same, nor any part thereof, had ever been divided among the stockholders, nor paid over to them, nor passed to their credit; that it was retained and held by the company, as a corporation, and that the legal title to the same remained vested in the company; that the fund accrued from earnings of the company, and was gain, profit, and income, and that it was duly assessed as such against the plaintiff for that year; and that the tax was duly collected by the defendant, as such collector. Instead of replying and taking issue upon the matters of fact set forth in the plea, the plaintiff filed a general demurrer to the same, and the defendant joined in demurrer. Hearing was had, and the court sustained the demurrer, and rendered judgment for the plaintiff (case unreported); and the defendant sued out a writ of error, and removed the cause into the supreme court, where the judgment of the circuit court was reversed, and the cause remanded, with directions to dismiss the suit for want of jurisdiction. Book 21 U. S. (Lawyers' Ed.) 112.]